580 N.W.2d 788 (1998)
FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,
v.
ALLIED MUTUAL INSURANCE COMPANY, Appellee.
No. 97-219.
Supreme Court of Iowa.
July 1, 1998.
*789 James A. Pugh and Lori K. Geadelmann of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for appellant.
John B. Grier and Merrill C. Swartz of Cartwright, Druker & Ryden, Marshalltown, for appellee.
Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.
CARTER, Justice.
This is an action in which a medical payment insurer of a settling tort claimant seeks recovery of damages from the settling tortfeasor's liability insurer for loss of a subrogation interest. The district court granted summary judgment for the tortfeasor's insurer. Upon reviewing the record and considering the arguments presented, we affirm the judgment of the district court.
On April 10, 1994, Carl Parker's automobile collided with an automobile driven by Michael Motsinger. Parker had insurance with Farm Bureau Mutual Insurance Company (Farm Bureau) that included medical payments coverage. Under that coverage, Farm Bureau paid Parker $7863.36 for treatment of injuries sustained in the collision with Motsinger. Motsinger's liability insurer was Allied Mutual Insurance Company (Allied).
To the extent of its medical payments to Parker, Farm Bureau was subrogated to any tort recovery he might obtain from Motsinger. Under the terms of the policy, this could be exercised irrespective of whether Parker had been made whole as to all elements of damage. Farm Bureau provided Allied with written notice of its subrogation interest, although it substantially understated the amount thereof. Later, Allied settled Parker's tort claim by means of an $11,000 cash payment directly to him in exchange for his release of all claims against Motsinger. Allied did not include Farm Bureau as a payee on the check to Parker.
In January 1996 Farm Bureau commenced this action against Allied, asserting theories of tortious interference with a contract, breach of an equitable subrogation right, and fraud. The district court granted summary judgment for Allied after concluding that Iowa law does not recognize a duty on the part of a tortfeasor's insurer to protect a subrogation interest of the victim's insurer in settling a claim.
Farm Bureau asserts that many courts in other jurisdictions have adopted the legal position that it is advocating. Most, if not all, of the cases, which it cites and all of the cases it actually argues in its brief, involve an entirely different issue.[1] The issue raised in those cases was whether the insurer's right to assert its subrogation claim against the tortfeasor was extinguished when its insured settled with the tortfeasor. The decisions in those cases determined that it was not. Those courts allowed the partially subrogated insurers to pursue their claims directly against the tortfeasor notwithstanding the insured's release.[2] Under Iowa law, however, a partially subrogated insurer may not pursue its subrogation claim directly against the tortfeasor at any time absent some inability or unwillingness of the subrogor to pursue the entire claim. Krapfl v. Farm Bureau Mut. Ins. Co., 548 N.W.2d 877, *790 880 (Iowa 1996). In the present case, Parker did pursue the entire claim against Motsinger.
In contrast to the cases on which it relies, Farm Bureau is not asking this court to hold that it may proceed to assert its subrogation claim against Motsinger, notwithstanding Parker's release. It seeks, rather, to recover against Allied in tort based on the violation of an alleged duty on Allied's part to protect Farm Bureau's interest when it was settling with Parker. We agree with the district court's conclusion that no such duty exists.
In United Security Insurance Co. v. Johnson, 278 N.W.2d 29 (Iowa 1979), we approved the following characterization of the interest of a partial subrogee:
[A]n insurer who has paid a loss is therefore subrogated (to the extent of the payment) to the rights of the insured; ...
[W]here the insurance payment covers the entire loss, the insurer becomes the party in interest and may bring an action; ...
[W]here the insurance covers only a portion of the loss, the right of action remains in the insured for the entire loss, the insured becoming a trustee for the insurer (to the extent of the loss paid by the insurer) in the recovery secured by it.
Id. at 30-31 (quoting Firemen's Ins. Co. v. Bremner, 25 F.2d 75, 76 (8th Cir.1928)). We recently approved this characterization of a partial subrogee's interest in Krapfl, 548 N.W.2d at 879. We believe that, pursuant to the principles recognized in the Krapfl and United Security cases, it is the subrogor that is a trustee of the settlement proceeds and not the tortfeasor or the tortfeasor's liability insurer.
Parker's obligation to repay Farm Bureau for the medical payments it made on his behalf was contractual. Allied did not interfere with that contract in settling Parker's claim. Rather than frustrating Parker's ability to repay Farm Bureau, it facilitated his ability to do so by providing him with a sum of money greatly exceeding the extent of Farm Bureau's subrogation interest. In making that payment, Allied was satisfying its own legal obligation to protect Motsinger from Parker's claim for damages. Satisfying Farm Bureau's subrogation interest was Parker's problem, not Allied's.
Farm Bureau contends that Allied's failure to protect its interest is a violation of industry practices. We are convinced that these rules of comity, to the extent that they exist, are simply a recognition that an insurer's self-interest transcends the exigencies of a particular transaction. The insurer of the tortfeasor in one transaction may, in another transaction, be the subrogated party seeking recoupment of its subrogation interest. Consequently, cooperation within the industry in protecting the interests of subrogated insurers is to be expected. But, these expectations do not rise to the level of legal duties that can be enforced by common-law decree. If these principles of comity are to be made legally binding, that is a task for the legislature to undertake rather than the courts.
We have considered all issues presented and conclude that the judgment of the district court should be affirmed.
AFFIRMED.
NOTES
[1] These cases include: Health Insurance Ass'n of America v. Shalala, 23 F.3d 412, 418 (D.C.Cir. 1994); Home Insurance Co. v. Hertz Corp., 71 Ill.2d 210, 16 Ill.Dec. 484, 375 N.E.2d 115, 117 (1978); Travelers Indemnity Co. v. Vaccari, 310 Minn. 97, 245 N.W.2d 844, 848 (1976); Milbank Insurance Co. v. Henry, 232 Neb. 418, 441 N.W.2d 143, 147 (1989); Imperial Casualty & Indemnity Co. v. General Casualty Co., 458 N.W.2d 335, 338 (N.D.1990); Mutual Service Casualty Co. v. American Family Insurance Group, 140 Wis.2d 555, 410 N.W.2d 582, 584-85 (1987).
[2] The presence of the tortfeasor's liability insurers in the litigation was due to the fact that the applicable state law permitted tort claims to be pursued directly against a tortfeasor's liability insurer. Direct actions are not permitted under Iowa law if the liability insurance policy is conditioned upon the recovery of a judgment against the insured. See McCann v. Iowa Mut. Liability Ins. Co., 231 Iowa 509, 513, 1 N.W.2d 682, 689 (1942).