**ALLIED MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Richard HEIKEN and Kathleen Heiken, Appellees.**

No. 02–1996.

Supreme Court of Iowa.

Feb. 25, 2004.

Zorica Ilic of Sporer & Ilic, P.C., Des Moines, for appellant.

Roger T. Stetson, Edward M. Mansfield, and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellees.

CADY, Justice.

This appeal requires us to consider the breach of contract remedies available to a subrogated insurer after the indemnified insured enters into a settlement with and release of the responsible tortfeasor in an action by the insured against the tortfeasor for damages. The district court granted summary judgment for the insured in the insurer's action against the insured for breach of the subrogation provisions of the insurance contract and for breach of the assignment executed by the insured upon payment of the loss by the insurer. On appeal, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Richard and Kathleen Heiken (Heikens) contracted with Gary Carruthers (Carruthers) to construct a steel building on their farm near Norwalk. The building was erected in 1997, and the Heikens insured it with a policy of insurance through Allied Mutual Insurance Company (Allied). The property portion of the policy contained a subrogation clause that permitted Allied to receive an assignment of rights of recovery for a loss to the extent of the loss paid, and required the Heikens to "cooperate" with Allied.

In early January 1999, the metal canopy of the building collapsed in the face of strong winds and the accumulation of snow on the building. Allied paid the Heikens $50,540 for their loss on September 9, 1999, and the Heikens assigned their rights arising from the loss to Allied. Pursuant to the written assignment, the Heikens authorized Allied to bring a lawsuit to recover the loss and agreed "to aid and assist" Allied in the collection of the loss.

In May 1999, Carruthers filed a petition against the Heikens to foreclose on a mechanic's lien of approximately $22,000 filed in connection with the construction of the steel building. In response, the Heikens filed a counterclaim to recover damages resulting from the collapse of the canopy, including the loss assigned to Allied. The Heikens claimed the structure was improperly built, and asserted claims of breach of contract, fraud, negligence, breach of warranty, and conversion. Allied sought to intervene in the action to protect its subrogation interests. The district court denied intervention.

On the day of trial, the Heikens and Carruthers entered into a settlement of their dispute. An attorney representing Allied participated in the negotiations and made Carruthers aware of its subrogation claim. Under the settlement, the Heikens and Carruthers agreed to dismiss their respective claims with prejudice. Allied refused to consent to the settlement or to give up its subrogation right despite negotiations between the parties.

Following the settlement, Allied demanded that it be reimbursed by the Heikens for the $50,540 it paid for the loss. Allied claimed the Heikens waived Allied's subrogation rights against Carruthers and breached the contract of insurance when they dismissed the counterclaim against Carruthers with prejudice. After the Heikens refused the demand, Allied filed a breach of contract action against the Heikens.

Allied eventually moved for summary judgment. It claimed it was entitled to the $50,540 loss paid to the Heikens because the Heikens terminated its subrogation rights by releasing Carruthers in violation of the insurance policy and the written assignment, which prevented Allied from asserting its subrogation rights

against Carruthers. The Heikens also moved for summary judgment. They claimed Allied's subrogation rights were not impaired because Carruthers accepted the dismissal of their counterclaim with knowledge of Allied's subrogation interest.

The district court granted summary judgment for the Heikens. It found as a matter of law that the dismissal of the counterclaim by the Heikens did not impair Allied's subrogation rights against Carruthers.

Allied appeals. It claims an insurer's subrogation rights against a third-party tortfeasor are destroyed when an indemnified insured releases the tortfeasor from liability for loss caused by the tortfeasor, and it is the insured, not the tortfeasor, who is responsible to the insurer for the loss of its subrogation rights under the theory that an indemnified insured is the trustee of the subrogation claim.

## II. Scope of Review.

Our review of a summary judgment ruling is for correction of errors at law. *McComas–Lacina Constr. Co. v. Able Constructors*, 641 N.W.2d 841, 843 (Iowa 2002). We must determine "whether a genuine issue of material fact exists and whether the district court correctly applied the law." *Id.*

## III. Subrogation.

We have previously discussed subrogation rights of an insurer in a variety of contexts, but have not fully considered the remedies available to the insurer when the indemnified insured releases the responsible tortfeasor from liability for the loss caused by the tortfeasor. A good starting point for our consideration of this issue in this case begins by looking back at the nature of subrogation rights in the insurance area.

Subrogation is a doctrine that originated in equity to give relief to a person or entity that pays a legal obligation that should have, in good conscience, been satisfied by another. *See* 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 222:8, at 222–30 (2000) [hereinafter *Couch* ]; *see also State Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (discussing principles related to unjust enrichment). The doctrine has emerged to play a vital role in insurance law by permitting an insurer who has paid a loss to an insured to become "subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss."[1] 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4051, at 103 (rev. ed.1972) [hereinafter *Appleman*]; *see also Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848, 851 (Iowa 1988). The doctrine is needed in the insurance field "to preserve the principle of indemnity." 4 Rowland H. Long, *The Law of Liability Insurance* § 23.01, at 23–3 (1998) [hereinafter *Long*].

These principles reveal that the insurer's claim for subrogation is against the tortfeasor responsible for the loss to the insured. The insurer has no right of subrogation against the insured. *Aid Ins. Co. v. United Fire & Cas. Co.* 445 N.W.2d 767, 771 (Iowa 1989). Nevertheless, the actions of an insured may affect the subrogation rights of an insurer to recover from the responsible third-party tortfeasor for a loss paid to an insured because these rights are derivative of the rights held by the insured against the tortfeasor.[2] *See*

---

1. Subrogation refers to both a legal right and a legal action. 4 Rowland H. Long, *The Law of Liability Insurance* § 23.01, at 23–2 (1998). The term comes from the Latin "subrogare," which means to substitute or put in place of another. *Id.*

2. The existence of a contract of insurance between the insurer and the insured does not

St. Paul Ins. Cos. v. Horace Mann Ins. Co., 231 N.W.2d 619, 625 (Iowa 1975) (stating "'rights ... acquired by an insurer against a wrongdoer rise no higher than those held by its insured against the offender'" (citation omitted)); Employers Mut. Cas. Co. v. Hanshaw, 176 N.W.2d 653, 655 (Iowa 1970) (same). The insurer's subrogation rights rest on the "viability of the insured's claim against the tortfeasor." 4 Long § 23.03, at 23–13 to –14. Consequently, when an insurer asserts a subrogation claim against a third-party tortfeasor, the insurer's rights are limited to the rights of recovery possessed by the insured. Employers Mut. Cas. Co., 176 N.W.2d at 655. At the time subrogation attaches, the insurer becomes subrogated to the insured's rights of recovery against the responsible tortfeasor, "and the insurer succeeds to all the procedural rights and remedies possessed by the insured." Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir.1992). Likewise, the insurer's subrogation claim is also subject to all defenses the tortfeasor could assert against the insured. Connor v. Thompson Constr. & Dev. Co., 166 N.W.2d 109, 113 (Iowa 1969); Conard v. Moreland, 230 Iowa 520, 523–24, 298 N.W. 628, 629–30

(1941); 16 Couch § 222:5, at 222–21. One such defense, applicable to this case, is release from liability or waiver of the cause of action by the insured. State Farm Fire & Cas. Co. v. Pac. Rent–All, Inc., 90 Hawai'i 315, 978 P.2d 753, 767 (Haw.1999); see also 44 Am.Jur.2d Insurance § 1788 (2003). Thus, "'[i]f the insured waives its right to bring an action against the tortfeasor, then the insurer is barred from bringing a subrogation action.'" State Farm Fire & Cas. Co., 978 P.2d at 767 (quoting 4 Long § 23.04, at 23–40).

 From these background principles, a general rule has emerged that the insurer's subrogation rights against a third-party tortfeasor may be lost when an indemnified insured settles with or releases the tortfeasor from liability for a loss caused by the tortfeasor. See Gibbs, 966 F.2d at 106. Thus, the question we face in this case is whether an insurer has a remedy against an insured when a release bars the subrogation rights of the insurer.

 In Kapadia, we held that the breach of a consent-to-settlement clause of an insurance policy is an affirmative defense to a claim for underinsured coverage

necessarily mean subrogation in the insurance field is contractual. There are two basic kinds of subrogation: equitable and contractual. Equitable subrogation, sometimes called "legal subrogation," arises as a matter of law from a relationship that may or may not be contractual. State Farm Fire & Cas. Co. v. Pac. Rent–All, Inc., 90 Hawai'i 315, 978 P.2d 753, 766 (Haw.1999); see also Kapadia v. Preferred Risk Mut. Ins. Co., 418 N.W.2d 848, 851 (Iowa 1988) ("Our jurisprudence has long imposed such rights of subrogation as a matter of law."). Contractual subrogation, sometimes called "conventional subrogation," arises from the contractual relationship between the parties. State Farm Fire & Cas. Co., 978 P.2d at 766; see also Kapadia, 418 N.W.2d at 851; 3 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 44.4, at 537 (rev.2d ed.2001). Thus, an insurer

who pays a loss suffered by an insured caused by a third-party wrongdoer "is entitled to be subrogated to the insured's rights against such third party ... even though the policy contains no stipulations to that effect." 8B John Alan Appleman & Jean Appleman, Insurance Law & Practice § 4944, at 31–35 (rev. ed.1981) [hereinafter Appleman]. The insurer's right to subrogation attaches by operation of law upon payment of the loss based on principles of equity. 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 222:5, at 222–22 to –27 (2000); see also 6A Appleman § 4051, at 112–13; Gerlach v. Grain Shippers' Mut. Fire Ins. Ass'n, 156 Iowa 333, 338, 136 N.W. 691, 693 (1912) (right of subrogation does not depend on a stipulation in the policy). However, such subrogation rights would be subject to any subrogation terms found in the contract of insurance.

by an insured following the insured's settlement and release of the responsible tortfeasor when the insurer establishes the breach prejudiced its right to enforce its subrogation interest under the policy by showing the claim could have succeeded and would have been collected from the tortfeasor. 418 N.W.2d at 852; *accord Hale v. Classified Ins. Co.,* 535 N.W.2d 164, 168 (Iowa Ct.App.1995). Although *Kapadia* dealt with a defense to the payment of a claim for underinsured motorist benefits following the insured's settlement with the tortfeasor, the approach followed in the case supports the broader concept that an insurer may use a subrogation clause of an insurance policy to protect its interests. *Kapadia,* 418 N.W.2d at 851. Thus, when a release given to a tortfeasor by an insured acts to bar the insurer's right of subrogation, the release should not only bar the insured's right of action on the policy for benefits not yet paid, but should also give the insurer a right to recover from the insured "if the insurer has already indemnified the insured." 4 Long § 23.04, at 23–40; *see Gibbs,* 966 F.2d at 106 ("Where a release of liability given by the insured to a third party destroys the insurer's right to subrogation, such a release bars the insured's right of action on the policy." Moreover, "if the insurer has already indemnified the insured, the insurer has a right to recover from the insured the amount paid on the policy."); 6A Appleman § 4051, at 110–11.

░░░ This broader application of *Kapadia* does not conflict with our existing principles that preclude the enforcement of subrogation rights against insureds, but merely recognizes that most insurance policies contain subrogation provisions that prevent an insured from taking action

prejudicial to the insurer's subrogation rights. *See State Farm Fire & Cas. Co.,* 978 P.2d at 767; *see also Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 N.J. 550, 428 A.2d 1254, 1260 (N.J.1981) (recognizing the tie between the traditional legal concept of subrogation and the language of insurance provisions providing for subrogation). A violation of such a provision in an insurance policy will normally " 'enable the insurer to deny the insured's claim if it has not already paid it or to recover its money back from the insured if it has already paid.' " *State Farm Fire & Cas. Co.,* 978 P.2d at 767 (quoting 4 Long § 23.04, at 23–40). Thus, an insurer who has lost subrogation rights due to the release of the responsible tortfeasor by the insured has a means to seek reimbursement from the insured for its loss based on breach of contract, not on a claim for subrogation. This approach is consistent with *Farm Bureau Mutual Insurance Co. v. Allied Mutual Insurance Co.,* where we recognized that an indemnified insured is a trustee for the benefit of the subrogated insurer of settlement proceeds paid to the insured by the responsible tortfeasor that exceed the insured's loss.[3] 580 N.W.2d 788, 790 (Iowa 1998) [hereinafter *Farm Bureau* ].

░░░ Although this discussion reveals we agree with Allied that a subrogated insurer may have a claim against the indemnified insured related to a loss of its subrogation rights, such a claim does not exist in every case where an insured releases the tortfeasor from liability. In *Kapadia,* we indicated that the breach of contract defense required the insurer to establish prejudice by showing its subrogation rights were lost and that it could have otherwise recovered from the tortfeasor.

---

3. Allied made no claim in this case that the Heikens received any settlement proceeds, either directly or indirectly, that would give rise to a claim against the Heikens as trustees or that the Heikens' settlement with Carruthers provided the Heikens value that was recoverable under a trust theory.

418 N.W.2d at 852. Yet, we were not presented with the occasion in that case to examine these elements, particularly the requirement that the release actually prevented the insurer from asserting its subrogation rights against the tortfeasor. *See id.* Instead, this appeared to be an accepted proposition in the case. *See id.*

 While it is generally true that an insurer's subrogation rights are lost when an indemnified insured releases the responsible tortfeasor, and this could then give rise to a breach of contract claim against the insured, there is an important well-recognized exception to this rule that impacts this case. This exception provides:

> Where a third party tortfeasor obtains a release from an insured with knowledge that the latter has already been indemnified by the insurer or with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such release does not bar the insurer's right of subrogation.

*Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 260 (2d Cir.1999); *see also* 6A Appleman § 4092, at 246; 16 *Couch* § 224:113, at 224–138 to –141; *State Farm Fire & Cas. Co.*, 978 P.2d at 767–68 (collecting cases and other authorities).

We have not previously considered how knowledge by the tortfeasor, at the time the release is given by the insured, may act to preserve the subrogation rights of the insurer. In *Kapadia*, there was no claim asserted that the release did not bar the insurer from pursuing its subrogation rights against the tortfeasor. Thus, our failure to recognize an exception to the rule in that case that a release by the insured bars subrogation rights of the insurer cannot be viewed as a rejection of the exception.

Notwithstanding, Allied claims our decision in *Farm Bureau* rejected the notion that an insurer could bring a subrogation claim against a tortfeasor after the insured settled with the tortfeasor. We disagree. In *Farm Bureau*, we held that a tortfeasor's insurer was not liable to a subrogated insurer for paying settlement proceeds to the indemnified insured because the tortfeasor's insurer had no duty to protect the subrogation interests of the subrogated insurer. 580 N.W.2d at 790. Our discussion concerning the imposition of a trust on the insured in cases involving a partially subrogated insurer helped explain that the subrogated insurer's remedy under such circumstances was against the insured, not the tortfeasor or the tortfeasor's insured.[4] Although we also discussed the inability of a partially subrogated insurer to pursue a direct action against the tortfeasor as a way to distinguish cases from other jurisdictions that permit insurers to assert subrogation claims against the tortfeasor after the insured has settled with the tortfeasor, we did not imply that an insurer could never proceed against the tortfeasor. *Id.* at 789. Instead, we specifically recognized this to be a separate issue from the claim against the tortfeasor's insurer. *See id.* at 789–90. Thus, we have not rejected the concept that no exceptions exist that would permit a subrogation claim against a tort-

---

4. We reject the claim by Allied that the "trustee" concept discussed in *Farm Bureau* applied to this case to make the Heikens the trustee of its subrogation claim. *Farm Bureau Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 580 N.W.2d 788, 790 (Iowa 1998). *Farm Bureau* recognizes the subrogee insured may become a trustee of those settlement proceeds received from the responsible tortfeasor considered to be losses previously paid by the insurer. *See id.* at 790; *see Krapfl v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 877, 879–80 (Iowa 1996); *United Sec. Ins. Co. v. Johnson*, 278 N.W.2d 29, 30–31 (Iowa 1979). However, the insured is not the trustee of the claim.

feasor after the insured settles with and releases the tortfeasor. In fact, the legal principles responsible for the imposition of the trustee concept discussed in *Farm Bureau* are compatible with such an exception.

The legal principle responsible for placing an indemnified insured into the position of a trustee of settlement proceeds for the benefit of the subrogated insurer is that a partially subrogated insurer is normally unable to bring a claim against a tortfeasor to obtain reimbursement directly against the tortfeasor. *See Krapfl*, 548 N.W.2d at 879–80. Consequently, a partially subrogated insurer must ordinarily look to the insured to collect reimbursement when the insured sues the wrongdoer for damages. *See Farm Bureau*, 580 N.W.2d at 790. The reason a partially subrogated insurer is generally unable to assert a subrogation claim directly against the tortfeasor is that the rule against splitting causes of action prohibits the insurer from bringing such an action. *See* 16 *Couch* § 224:172, at 224–199 (generally, a single act of negligence causing harm to another "can be the basis of only one cause of action on his or her behalf, and cannot be divided or split into … separate suits, so that a recovery for part of the loss will bar a subsequent suit to recover the other elements of damage."). As between the injured insured and a partially subrogated insurer, the insured is given the right of action against the responsible tortfeasor. *Farm Bureau*, 580 N.W.2d at 789–90. Thus, if a partially subrogated insurer would attempt to assert a subrogation claim directly against the tortfeasor, the tortfeasor could normally assert the rule against splitting causes of action as a defense. This result relates back to the basic principle that the subrogation rights are derivative of the rights of the insured against the responsible tortfeasor, and are subject to all defenses by the tortfeasor. *Farm Bureau* accepts these principles, and utilizes a trust concept to capture those settlement proceeds that include losses previously paid by the insurer. The trust is imposed to prevent the injustice that would otherwise result by the inability of the insurer to independently pursue its claim. Clearly, the basis for the trust is found in principles of equity. *See Leader Nat'l Ins. Co. v. Torres*, 113 Wash.2d 366, 779 P.2d 722, 723 (Wash.1989) (resolution of subrogation issues is guided by the equitable principle that the injured party is entitled to be made whole but not allowed a double recovery); 16 *Couch* § 222:8, at 222–30 (doctrine of subrogation is based on principles of equity).

Similarly, the rationale for the exception to the rule that a release bars an insurer's subrogation claim is that the release would otherwise "operate as a fraud upon the insurer" and result in prejudice. *Allstate Ins. Co.*, 175 F.3d at 261; 6A Appleman § 4092, at 246–49 (settlement constitutes fraud on the insurer); *see* 16 *Couch* § 224:13, at 224–138 to –141. Thus, the exception recognizes that the entire concept of subrogation is driven by principles of equity, and that a settlement between an insured and tortfeasor with knowledge of the subrogation rights of an insurer who does not consent to the settlement is inequitable. *See Leader Nat'l Ins. Co.*, 779 P.2d at 724–25 (discussing the equities of placing the loss of subrogation rights on the tortfeasor or insured). This inequitable behavior means that the tortfeasor

either waives his or her right to invoke or is estopped to rely upon the rule against splitting a cause of action as a defense to an action by the nonconsenting insurer as subrogee. Under such circumstances, the settlement is regarded as having been made subject to and with a reservation of the rights of the insurer, and the tortfeasor is deemed to

have consented to a separation ·of the rights of the insured and the insurer. 16 *Couch* § 224:179, at 224–203 to ·–204 (footnote omitted); *see Gibbs,* 966 F.2d at 107. We observe this exception is generally accepted by other jurisdictions and is consistent with the equitable nature of subrogation. *See Leader Nat'l Ins. Co.,* 779 P.2d at 724 (recognizing that an "overwhelming majority of states" allows a subrogation action if the tortfeasor knew of the insurer's subrogation interest prior to the release). We think it is properly applied to our cases. "Where the insurer's subrogation right clashes with the tortfeasor's contractual release right, the· insurer's subrogation right will prevail if the tortfeasor acted inequitably." *State Farm Fire & Cas. Co.,* 978 P.2d at 771.

 The impact of the general rule and exception means that an insured does not necessarily breach the "no prejudice" terms of a subrogation clause of an insurance policy by settling with and releasing the responsible tortfeasor. If the exception applies, the tortfeasor is liable for subrogation.[5] The release executed by the insured under such circumstances does not prejudice the subrogation rights of the insurer and there can be no breach of the subrogation clause of the policy. Thus, where the exception applies, the insurer is not prejudiced. As a result, the subrogated insurer must seek reimbursement from the responsible tortfeasor, not the indemnified insured. If the exception does not apply, the insurer has a remedy against the insured under a breach of contract theory.

 As with breach of the consent-to-sue clause used as a defense against a claim by an insured under the policy, we believe a claim by the insurer against an indemnified insured for breach of the policy based on the loss of its subrogation interest requires the insurer to show its subrogation rights were lost and prejudice resulted· from the loss. *See Kapadia,* 418 N.W.2d at 852; *Gibbs,* 966 F.2d at 106 ("if the insurer has not been prejudiced" by the release, "it may not deny recovery" by the insured or "recover any amount paid on the policy" from the insured). Normally, the loss ·of subrogation rights can be established by evidence that the insured litigated a claim with a third-party tortfeasor that gave rise to the insurer's subrogation interest, resulting in a settlement with and release of the tortfeasor from liability. Once the subrogation rights are shown to be lost, the insurer would need to establish it was actually prejudiced by the loss. *See Grinnell Mut. Reins. Co. v. Recker,* 561 N.W.2d 63, 68 (Iowa 1997) (insurer must show breach of policy prejudiced insurer's rights to subrogation against tortfeasor). However, if the insured can show that the exception to the general rule applies based on knowledge by the tortfeasor of the insurer's subrogation right at the time of the release and settlement, then the subroga-

---

5. Although the exception makes the tortfeasor liable for subrogation by the insurer after the tortfeasor has settled with—and even paid settlement proceeds to—the insured, this does not mean the tortfeasor must pay twice. Subrogation law is controlled by principles of equity and its goal is to ultimately hold the wrongdoer responsible for the damage caused to the insured. *See State, Dep't of Human Servs. ex rel. Palmer v. ·Unisys Corp.,* 637 N.W.2d· 142, 149–50 (Iowa 2001). The purpose is not to allow a party to escape responsibility, recover extra proceeds, or pay twice. *See id.* Thus, any settlement proceeds paid by the tortfeasor to the insured that represent losses previously paid by the insurer would be a credit against the insurer's subrogation claim, and would generally be recoverable by the insurer against the insured on a trustee theory. Additionally, except for the defense of the rule against splitting actions and release and settlement, the tortfeasor could normally assert most any other defense against a ·claim ·by the insurer it could have asserted against the insured.

tion rights of the insurer are not lost and the release does not operate as a breach of the insurance policy. *See Gibbs,* 966 F.2d at 106–07.

These legal principles reveal that an insurer has two avenues to pursue when the insured and tortfeasor enter into a settlement and release after the insurer has made a payment on the claim to the insured pursuant to the policy.[6] *See State Farm Fire & Cas. Co.,* 978 P.2d at 767–69. An insurer may have a claim against the insured based on breach of the policy.[7] It may also have a subrogation claim against the tortfeasor, despite the settlement and release, based on principles of equity that preclude the tortfeasor from using the settlement and release as a defense when the tortfeasor had knowledge of the subrogation rights. In this case, the insurer chose to pursue its action against the insured. Thus, we turn to the undisputed facts to determine if they support the decision by the district court to dismiss Allied's claim.

### IV. Application of Subrogation Law to the Case.

The undisputed facts in the case reveal Carruthers had knowledge of Allied's subrogation interest at the time of the settlement. This was established by two circumstances. First, Allied sought to intervene in the action between Carruthers and the Heikens. The petition for intervention alleged the existence of the subrogation right. Second, Allied monitored the case between Carruthers and the Heikens, and actually participated in the settlement negotiations in an effort to protect its subrogation claim. Thus, in the context of this case, it is undisputed that Carruthers knew of Allied's subrogation claim at the time he obtained a release from the Heikens. Therefore, Carruthers remains liable on Allied's subrogation claim. Consequently, Allied is unable to establish in this action that the settlement and release impaired its subrogation claim against Carruthers. As a matter of law, Allied cannot recover from the Heikens for breach of the subrogation terms of the insurance policy or the written assignment.

### V. Conclusion.

We conclude the district court properly granted summary judgment for the Heikens.

**AFFIRMED.**

All justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent.

Although *Farm Bureau Mutual Insurance Co. v. Allied Mutual Insurance Co.,* 580 N.W.2d 788 (Iowa 1998), is not strictly in conflict with the majority's holding because the right of the subrogated insurer to sue the tortfeasor was not an issue in that case, the conclusions upon which that

---

6. We recognize this area of the law can be complex and we limit our holding to the facts of this case. We make no attempt to define the full rights and remedies of the parties under all circumstances, and recognize that Allied's sole reason for claiming it is unable to pursue its subrogation claim against Carruthers is predicated on the rule against splitting causes of action and the effect of the release. We limit our resolution of the issues in this case to the claims raised by the parties. Nevertheless, the principles we apply to resolve this case reveal that the best practice would be to bring all the parties together to the same table during the course of the action between the insured and the tortfeasor to resolve all issues and avoid a piecemeal resolution of the matter.

7. If a settlement between the insured and tortfeasor provides proceeds to the insured, the insurer could also have a claim against the insured based upon a trustee theory to the extent the proceeds represent the loss paid by the insurer.

decision was based and the conclusions in *Krapfl v. Farm Bureau Mutual Insurance Co.*, 548 N.W.2d 877 (Iowa 1996), and *United Security Insurance Co. v. Johnson*, 278 N.W.2d 29 (Iowa 1979), leave no doubt that under Iowa law a partially indemnified insured is empowered to control the litigation. A subrogated insurer's only interest is to share in any recovery that may be had.

In *Farm Bureau* we relied on *Krapfl* and *Johnson* to observe:

> Pursuant to the principles recognized in the *Krapfl* and *United Security* cases, it is the subrogor that is the trustee of the settlement proceeds and not the tortfeasor or the tortfeasor's liability insurer.

*Farm Bureau*, 580 N.W.2d at 790. We had previously stated in the opinion that:

> Under Iowa law, however, a partially subrogated insurer may not pursue its subrogation claim directly against the tortfeasor *at any time* absent some inability or unwillingness of the subrogor to pursue the entire claim.

*Id.* at 789 (citing *Krapfl*, 548 N.W.2d at 880) (emphasis added).

In *Krapfl* we stated:

> Although there is language in the *Johnson* case indicating that a subrogee may join with the subrogor in an action against a tortfeasor, we have recognized that such joinder requires the consent of the subrogor. *Caligiuri v. Des Moines Ry.*, 227 Iowa 466, 468–69, 288 N.W. 702, 702–03 (1939). Absent such consent a subrogated party that is paid only a portion of the entire loss has no right to claim directly against the tortfeasor in competition with a subrogor who is actively pursuing the entire claim.

548 N.W.2d at 879. Some of the language in the *Johnson* case, which was referred to in *Krapfl* involved the following quotation from *Firemen's Insurance Co. v. Bremner*, 25 F.2d 75, 76 (8th Cir.1928):

> [A]n insurer who is paid a loss is thereby subrogated (to the extent of the payment) to the rights of the insured; that, where the insurance payment covers the entire loss, the insurer becomes the party in interest and may bring an action; that, where the insurance covers only a portion of the loss, the right of action remains in the insured for the entire loss, the insured becoming a trustee for the insurer (to the extent of the loss paid by the insurer) in the recovery secured by it; *that the right of action for the entire loss is single and cannot be split and separately maintained by the owner and the various insurers who have paid parts of the loss.*

*Krapfl*, 548 N.W.2d at 879 (quoting *Bremner*, 25 F.2d at 76) (emphasis added).

I submit that if the insured is empowered to bring the entire claim it is completely illogical to conclude that the insured may not settle the case against the tortfeasor with finality. It is unrealistic to expect a party sued by the insured to protect the insurer who has no legal right to bring the claim. To suggest that a failure to do so amounts to fraud against the insurer and to fabricate an exception to the rule against the splitting of causes of action based on that fiction is completely untenable.

Another reason that the majority is mistaken is that, even if we were to accept the premise that the subrogated insurer may sue the tortfeasor notwithstanding the release, that should provide no basis for relieving the insured from liability. Our cases make clear that, if the insured receives proceeds as part of a settlement, it holds them as trustee for the subrogated insurer. Consequently, even if a settlement does not cut off the subrogated insurer's right to sue the tortfeasor, it should still be allowed to sue its insured to collect the proceeds that under Iowa law

are held by the insured as a trustee. Contrary to the majority's conclusion, the claim against the insured in the present case is broad enough to include this theory of recovery. The summary-judgment proceedings had not sufficiently narrowed the issues to eliminate such a claim.

I am not at all convinced that the fact that there were no cash proceeds paid to the insured in the present case precludes the insurer from suing its insured to recover the cash value of the setoff that was negotiated against the mechanics-lien claim. Obviously, that value is not apparent in the record, but it could become the subject of proof at trial.

I would reverse the district court.