# IN THE SUPREME COURT OF IOWA

No. 07–0101

Filed July 31, 2009

**JAMES B. WILSON,**

Appellant,

vs.

**FARM BUREAU MUTUAL INSURANCE COMPANY,**

Appellee.

Appeal from the Iowa District Court for Muscatine County, David H. Sivright, Jr., Judge.

Appeal and cross-appeal of district court calculation of judgment and interest. **AFFIRMED AS MODIFIED; REMANDED WITH INSTRUCTIONS.**

Sara L. Riley of Tom Riley Law Firm, Cedar Rapids, for appellant.

Brian C. Ivers, Patrick L. Woodward, and Heather L. Carlson of McDonald, Woodward & Ivers, P.C., Davenport, for appellee.

**CADY, Justice.**

This is the second appeal in the second lawsuit to arise from a motor vehicle accident in which an automobile struck and killed a pedestrian. In the first lawsuit, the pedestrian's estate sued the driver of the automobile and a jury awarded damages. In this second lawsuit, the estate is seeking underinsured motorist benefits from the decedent's insurer. Our decision in the first appeal in this second lawsuit determined the decedent's underinsured motorist insurer could not relitigate the issue of damages in this second lawsuit, and we remanded for proceedings consistent with our opinion. On remand, the district court entered a judgment reflecting an offset for previous payments by the decedent's insurer and awarded interest. Both parties appealed. We affirm the judgment but remand for modification of both the offset and the interest award.

## I. Background Facts and Proceedings.

Lily Wilson was struck by a car while walking across a road to collect mail from her mailbox. Tragically, she died later the same day from injuries suffered in the accident.

Wilson's estate sued the driver of the motor vehicle, and a jury awarded the estate $159,795.31 in the lawsuit against the driver. The award included $7906.81 for interest on reasonable burial expenses, $6888.50 for medical expenses, and $145,000 for loss of parental consortium. The jury found Wilson to be twenty percent at fault for the accident. The jury instructions, given by the trial court without objection, informed the jury Wilson's damages would not be reduced by her fault. Despite the instructions, the district court reduced a portion of the jury's award by twenty percent and entered judgment for $127,836.24.

The estate moved to amend the judgment based on the unchallenged jury instruction. Prior to a ruling, the tortfeasor's insurer paid its policy

limits of $100,000 in exchange for satisfaction of the judgment. The district court, realizing its error and attempting to correct it, subsequently granted the motion and amended the judgment to $156,836.25.[1]

Wilson's estate then demanded payment of $56,836.25 along with prejudgment and postjudgment interest from Farm Bureau Mutual Insurance Company, Wilson's insurer, under the underinsured motorist provision of the policy of insurance. Farm Bureau offered $22,000 in full settlement, which the estate rejected.

As a result, the estate sued Farm Bureau for breach of the insurance contract. Cross-motions for summary judgment were directed to the issue of whether Farm Bureau was precluded from relitigating the issue of damages. Ultimately, we held in a previous appeal that Farm Bureau was bound by the original judgment of $127,836.24, and we remanded. *See Wilson v. Farm Bureau Mut. Ins. Co.*, 714 N.W.2d 250, 263 (Iowa 2006).

On remand, the estate requested the district court to enter judgment. The district court entered a judgment against Farm Bureau for $27,836.24 "together with interest as allowed by law" and costs on July 3, 2006. After Farm Bureau objected to the judgment, the district court amended the judgment on December 19, 2006. The amended judgment is the basis of the present appeal. The district court explained the judgment in a seven-page ruling filed December 19, 2006, addressing two primary issues affecting calculation of the judgment.

First, the district court considered the effect of a pretrial $5000 payment for medical expenses by Farm Bureau to Wilson's estate. The payment represented the policy limits of the "medical payment coverage"

---

[1]The amended judgment reflected the district court's belief that the interest on reasonable burial expenses and medical expenses should be reduced by Wilson's fault, but the loss-of-consortium damages should not be reduced.

provision of Wilson's insurance contract with Farm Bureau. The medical payment coverage provision provided that any medical payment coverage paid would be applied to reduce any payment later owed under the underinsured motorist provision of the insurance contract. The district court held Farm Bureau's argument that the judgment must be offset by the $5000 medical coverage payment was a claim for subrogation. As a result, the district court held Iowa Code section 668.5(3) (2001) required the "subrogation" claim to be reduced by the twenty percent comparative fault assigned to Wilson by the jury. Nonetheless, the district court held Farm Bureau was entitled to a $5000 offset because the reduction of Wilson's $6888.50 in medical expenses by her twenty percent fault still exceeded $5000. The district court further held Farm Bureau was responsible, as a subrogee, to pay the estate a prorated share of the attorney fees and expenses incurred in obtaining the jury verdict against the underinsured motorist. The district court held Farm Bureau's share of attorney fees was $1666.67, with expenses of $121.47.

Second, the district court calculated the interest owed by Farm Bureau. The court held Farm Bureau was responsible for all interest the estate could have recovered from the tortfeasor. The court held interest began to accrue on the date the underlying tort lawsuit was filed against the tortfeasor according to Iowa Code section 668.13, and the "aggregated award" (presumably the jury award plus interest from the date of the underlying tort suit) in turn accumulated interest from the date of judgment in the tort suit according to Iowa Code section 535.3(1). Finally, the district court suspended the accrual of interest during the pendency of the first appeal of this second lawsuit, resuming on the date of our ruling in the first appeal.

Both parties appealed from the judgment. The estate argues the district court erroneously failed to reduce Farm Bureau's offset for medical payment coverage below $5000, erred in its method of deducting the offset, and incorrectly suspended postjudgment interest. Farm Bureau argues the offset for the payment of $5000 under the medical payments coverage provision is a contractual offset, not subject to subrogation principles, and it should not have been reduced by comparative fault or by a pro rata share of attorney fees and expenses. Farm Bureau also argues the district court erred in its award of interest.

## II. Standard of Review.

The parties agree these legal issues should be reviewed for errors of law. Iowa R. App. P. 6.907 (2009). We have previously reviewed interest issues for errors of law. *Opperman v. Allied Mut. Ins. Co.*, 652 N.W.2d 139, 142 (Iowa 2002); *Wilson v. IBP, Inc.*, 589 N.W.2d 729, 730 (Iowa 1999).

## III. Subrogation and Offsets.

Farm Bureau acknowledges it is responsible for the amount of damages not recovered by Wilson's estate from the driver of the automobile that struck and killed Wilson. The estate concedes Farm Bureau is entitled to offset from that amount some portion of the $5000 previously paid by Farm Bureau under the medical payment coverage provision of the insurance contract. The estate maintains, however, the $5000 offset is a subrogation interest and should be reduced according to two different principles applicable to subrogation interests.

The estate first points to the axiom "that the rights of a subrogee are the same as, but no greater than, those of the person for whom the subrogee is substituted." *Employers Mut. Cas. Co. v. Chicago & N.W. Transp. Co.*, 521 N.W.2d 692, 696 (Iowa 1994). Relying on that principle, the estate argues Farm Bureau's rights as a subrogee can be no greater than Wilson's rights,

for whom it is substituted. Consequently, as the argument goes, Farm Bureau's subrogation interest must be reduced by Wilson's twenty percent comparative fault.

Second, the estate argues the offset should be reduced by a pro rata share of attorney fees and expenses attributable to Farm Bureau. The estate points to Iowa Code section 668.5(3), which is part of our comparative fault statute and requires, in comparative fault cases, "contractual or statutory subrogated persons shall be responsible for a pro rata share of the legal and administrative expenses incurred in obtaining the judgment or verdict." The principle is also an equitable one applicable in all subrogation contexts. *Principal Cas. Ins. Co. v. Norwood*, 463 N.W.2d 66, 68 (Iowa 1990) (recognizing the insurer should pay pro rata attorney fees and expenses because it " 'should not be entitled to enjoy the fruits of the assured's judgment against a tortfeasor without contributing in any way to the costs or burdens of litigating that claim' " (quoting *Hedgebeth v. Medford*, 378 A.2d 226, 230 (N.J. 1977))). Farm Bureau argues both of those principles are inapplicable because Farm Bureau is not a subrogee; in other words, the offset is not a subrogation interest but a contractual one.

Our cases have previously discussed subrogation rights, including in the insurance context. "Subrogation is a doctrine that originated in equity to give relief to a person or entity that pays a legal obligation that should have, in good conscience, been satisfied by another." *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824 (Iowa 2004). "Subrogation refers to both a legal right and a legal action." *Id.* at 824 n.1. "The term comes from the Latin 'subrogare,' which means to substitute or put in place of another." *Id.* The subrogee's rights are derivative of the rights held by the insured against the tortfeasor. *Id.* at 824. In the insurance context, the doctrine permits "an insurer who has paid a loss to an insured to become 'subrogated in a

corresponding amount to the insured's right of action against any other person responsible for the loss.'" *Id.* (quoting 6A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4051, at 103 (rev. ed. 1972)). Subrogation rights often arise by contract, but even when the insurance contract does not explicitly provide for them, "[t]he insurer's right to subrogation attaches by operation of law upon payment of the loss based on principles of equity." *Id.* at 824–25 n.2.

Because the subrogated insurer is being substituted for the insured for reasons of contract or equity, the subrogated insurer's rights are "subject to all defenses the tortfeasor could assert against the insured." *Id.* at 825. The estate relies on this principle to argue Farm Bureau's right to set off the previously paid medical expenses should be reduced by Wilson's twenty percent fault. Apparently, the argument is that the estate would have no right to the entire $5000 in medical expenses against the tortfeasor because Wilson was twenty percent at fault.

The argument asserted by the estate ignores the basis for the offset in this case. This case does not arise from any of the typical subrogation contexts. This is not a case in which the insurer pays its insured then seeks to assert contractual or equitable subrogation rights against the responsible tortfeasor. Nor is this a case in which the insurer pays its insured some amount, then the insured sues the tortfeasor to collect more damages. In this latter case, the insurer is subrogated to the portion of its insured's claim that it paid. *Id.* at 824. However, the subrogation interest—being derived from the insured's interest—is subject to any defenses available against the insured. *Id.* at 824–25.

In this case, Farm Bureau asserts a contractual offset. The pertinent contract of insurance at issue provides: "Any payment [under the medical payment coverage provision] shall be applied toward . . . the payment of a

money judgment of bodily injury for any insured under . . . Part IV [underinsured motorist coverage provision]." While underinsured motorist coverage is mandatory in Iowa, *see* Iowa Code § 516A.1, offsets and other limitations are permissible for the purpose of avoiding duplication of coverage. *See* Iowa Code § 516A.2 (providing underinsured "forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits"); *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 295 (Iowa 1990) (approving an identical offset). The offset sought by Farm Bureau is not an attempt to claim its subrogation interest in money paid to the estate by the tortfeasor. Instead, Farm Bureau is seeking to enforce a bargained-for contract provision allowing it to avoid paying duplicative benefits by reducing its underinsured-motorist-coverage payment by the amount already paid pursuant to the medical-payment-coverage section of the policy. Because the interest asserted is not a subrogation interest, the typical equitable reductions are not applicable.

The reductions of subrogation interests provided for in Iowa Code section 668.5(3) are treated the same. The estate argues Iowa Code section 668.5(3) requires the offset to be reduced by Wilson's fault and a pro rata share of attorney fees and expenses attributable to Farm Bureau. Iowa Code section 668.5(3) applies to subrogation rights.[2] Again, there is no

---

[2]Iowa Code section 668.5(3) provides:

> 3. Contractual or statutory rights of persons not enumerated in section 668.2 for subrogation for losses recovered in proceedings pursuant to this chapter shall not exceed that portion of the judgment or verdict specifically related to such losses, as shown by the itemization of the judgment or verdict returned under section 668.3, subsection 8, and according to the findings made pursuant to section 668.14, subsection 3, and such contractual or statutory subrogated persons shall be responsible for a pro rata share of the legal and administrative expenses incurred in obtaining the judgment or verdict.

subrogation right involved here, so section 668.5(3) should not be applied to reduce the contractual offset.

Additionally, Farm Bureau points to our past precedent holding chapter 668 does not apply to underinsured motorist claims based on contract. Indeed, we addressed the question of whether chapter 668 applies to lawsuits if an injured party sues its insurer for underinsured motorist claims. In *Vasquez v. LeMars Mutual Insurance Co.*, 477 N.W.2d 404 (Iowa 1991), we confronted the issue of whether the interest provision of section 668.13 governs in such a lawsuit. In *Vasquez*, we based our holding on the section 668.13(1) provision that the subsection applied only to " 'actions brought pursuant to' " chapter 668. 477 N.W.2d at 408–10 (emphasis omitted) (quoting Iowa Code § 668.13). We recognized that chapter 668, which governs comparative fault, applies only to claims " 'involving the fault of more than one party to the claim.' " *Id.* at 409 (quoting Iowa Code § 668.3(2)). We held the underinsured motorist claim was a contractual one, and consequently did not involve "the fault of more than one party to the claim." *Id.* "Simply put, the underinsured motorist claim did not trigger chapter 668 because the requirements of section 668.3(2) were not met." *Id.* at 410. The underinsured motorist claim here was similarly not brought pursuant to chapter 668.

Still further, the equitable principle underlying the requirement of the insurer to pay a pro rata portion of the attorney fees and expenses is inapposite to the facts of this case. Farm Bureau is not seeking a free ride on the coattails of the estate's counsel. With regard to Farm Bureau's demand to reduce the judgment by the $5000 it paid pursuant to the medical payment coverage provision, Farm Bureau is not benefiting from the estate's efforts to recover money from the tortfeasor. Instead, Farm Bureau is seeking to enforce the contract clause allowing the insurer to set off the

$5000 of medical payment coverage Farm Bureau *itself* paid voluntarily from a subsequent payment under the underinsured motorist coverage provision. Thus, we refuse to read section 668.5(3) and our past cases dealing with equitable subrogation to require an insurer to pay for the insured's attorneys' efforts to recover the medical payments the very same insurer paid voluntarily. *See Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 142 (Ind. 2005) (refusing to hold "the legislature intended the Subrogation Statute to compel an insurer to pay attorney's fees to recover the amount of its medical payments from itself"). Farm Bureau is entitled to a full $5000 offset of the amount it owes under the underinsured motorist coverage provision. That amount will be influenced by our review of the district court's award of interest, from which both parties have appealed, and to which we now turn.

## IV. Interest.

The district court judgment, as amended, provided for interest from February 7, 2000, when the estate filed the underlying tort lawsuit. The court suspended interest on the judgment during the first appeal of this second lawsuit until May 12, 2006, the day we filed our first opinion in this second lawsuit. Both parties appealed the district court's calculation of interest. The estate argues the district court improperly credited certain payments to principal rather than interest and also erred in suspending interest during the first appeal of this second lawsuit. Farm Bureau does not dispute the district court holding that interest began to run when the underlying tort lawsuit was filed, but argues no interest should have accumulated from March 19, 2002, when the tortfeasor's insurer paid its policy limits until December 19, 2006, when the district court amended its July 3, 2006 judgment in this lawsuit.

In order to begin on firm ground, we begin where the district court, the parties, and precedent of this court unanimously agree. As an underinsured motorist carrier, Farm Bureau "bound itself under its insurance policy to pay its insured what the insured would have recovered against a third party if that party had been adequately insured." *Opperman*, 652 N.W.2d at 142. The district court began from this understanding, and Farm Bureau does not contest it.

The district court relied on Iowa Code section 668.13 to hold the estate was entitled to recover from the tortfeasor the judgment in the underlying tort lawsuit together with interest from the date of the commencement of the action. The provision of prejudgment interest in section 668.13 "is based on the realization that the loss caused by tortious conduct results in the loss of use of compensatory damages, and to make the plaintiff whole, prejudgment interest should be allowed." *Id.* at 142–43. Neither party argues interest started to run on the tort damages at any other time, so we will not review that portion of the district court's holding.[3] Thus, interest began to run on February 7, 2000, the date the underlying tort lawsuit was commenced.

---

[3]At common law, Iowa courts applied the general rule that interest does not run until money becomes due and payable, "and in the case of unliquidated claims this is the date they become liquidated, ordinarily the date of the judgment." *Mrowka v. Crouse Cartage Co.*, 296 N.W.2d 782, 783 (Iowa 1980). We recognized an exception to this rule " 'in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun.' " *Id.* (quoting *Bridenstine v. Iowa City Elec. Ry.*, 181 Iowa 1124, 1136, 165 N.W. 435, 439 (1917), *overruled in part on other grounds by Menke v. Peterschmidt*, 246 Iowa 722, 727, 69 N.W.2d 65, 69 (1955)). We have noted that actions for wrongful death fall within that exception. *Id.* In addressing the apparent inconsistency between the common-law rule and section 668.13, we recently held section 668.13 "does not govern in those situations in which our case law has provided that interest may be allowed from a date prior to the filing of a petition" such as "when it has been shown that the damage was complete at a particular time." *Gosch v. Juelfs*, 701 N.W.2d 90, 92 (Iowa 2005). Although these rules seem to apply to this wrongful death action, the parties have not preserved and briefed the issue. Additionally, it seems dubious to say the loss of consortium damages at issue in this case were "fixed in amount and time of accrual" prior to the judgment in the tort lawsuit. *See id.* (endorsing prefiling interest on "fixed" or "certain" elements of damages but not future damages); *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 150 (Iowa 2002) (noting parental consortium damages may be enormous "and will arguably extend into [children's] adulthood."). As such, we forego consideration of that

On the date of judgment in the tort lawsuit, the interest was aggregated with the damages and began to draw interest as calculated by Iowa Code section 535.3, in the same way as any civil money judgment. The tortfeasor was insured for only $100,000 and provided proof of her inability to pay the excess judgment. *Wilson*, 714 N.W.2d at 254. According to *Opperman*, Farm Bureau was contractually bound to pay the estate what it would have recovered from the tortfeasor if the tortfeasor had been fully insured. 652 N.W.2d at 142. Thus, Farm Bureau was contractually responsible for the portion of the aggregated tort judgment (damages plus prejudgment interest) and postjudgment interest that the tortfeasor and her insurer did not pay.

Farm Bureau did not pay the portion of the aggregated tort judgment and postjudgment interest that the tortfeasor and her insurer had not paid. It also did not pay any uncontested portion of the excess judgment, plus interest. Instead, Farm Bureau offered a lower amount in exchange for full satisfaction of its liability under the insurance contract.

As a result, the estate sued Farm Bureau under the underinsured motorist coverage provision of the insurance contract. In a prior appeal, we held Farm Bureau was bound by the first judgment entry in the tort lawsuit. The district court entered a judgment in favor of the estate in the contract action, based on the first judgment in the tort action. Again, Farm Bureau did not pay the judgment, or any portion thereof, but asked the district court for a hearing to review the offset and interest issues. Eventually, the district court amended the judgment on December 19, 2006, and both parties appealed.

---

issue until a case where it has been passed on by the district court and fully briefed by the parties.

During this entire time, the estate has been deprived of money to which it was entitled under the underinsured motorist contract. The amount of money to which the estate was entitled under the contract is equal to the amount the tortfeasor would have been obligated to pay. This amount is the excess of the aggregated tort judgment, plus interest on the tort judgment according to Iowa Code section 535.3. Farm Bureau has not highlighted any principle that would stop the accrual of interest on the tort judgment. Likewise, Farm Bureau has failed to explain why interest is not payable as an element of damages under the underinsured motorist coverage provision of the contract.

Farm Bureau's argument that Iowa Code section 668.13 governs the award of interest in the tort lawsuit and section 535.3 governs the contract lawsuit is not technically incorrect. Yet, the argument ignores our rule in *Opperman*, that Farm Bureau has a contractual duty to pay the estate the damages, including interest, the estate would have received had the tortfeasor been financially solvent.

While this case is factually distinct from *Opperman* in one way, we do not believe the distinction makes a legal difference. Here, the estate proceeded against the tortfeasor and the decedent's insurer in successive lawsuits. In *Opperman*, the plaintiffs were injured in an automobile accident, sued the alleged tortfeasors, and later amended their petition to add their underinsured motorist insurance carrier as a defendant in the same action. *Id.* at 140. Farm Bureau seizes on this distinction to suggest interest does not run on the contract lawsuit until a judgment is entered. Again, Farm Bureau is technically correct. Iowa Code section 535.3 does not start the accrual of interest on the contract judgment until the date of the judgment. *Id.* at 143 n.1 (citing *Schimmelpfennig v. Eagle Nat'l Assurance Corp.*, 641 N.W.2d 814, 815 (Iowa 2002)). Yet, Farm Bureau fails to explain

why the *Opperman* holding does not make the company responsible for the interest accruing on the tort judgment as damages under the contract.

In *Opperman,* we held the plaintiffs were entitled to interest from the date of the original tort lawsuit until judgment was entered on the contract claim against the underinsured motorist carrier. *Id.* at 143. When judgment was entered on the contract action, we held the underlying damages award and the prejudgment interest should be aggregated and then draw interest under Iowa Code section 535.3, just like any civil judgment. *Id.* We noted that the prejudgment interest is part of the plaintiff's damages in the contract action. *Id.* We also rejected an argument that the award of interest should turn on whether the plaintiff sued the tortfeasor and the underinsured motorist carrier in the same lawsuit or in successive lawsuits. *Id.* at 142.

While that procedural distinction does require a slightly different calculation in this case, we do not believe it prevents the fundamental holding of *Opperman* from applying to the facts here. The purpose of allowing interest on the aggregated tort judgment is "to encourage prompt payment and to compensate the plaintiff for another's use of his or her money." 44B Am. Jur. 2d *Interest & Usury* § 40, at 63–64 (2007). Thus, Iowa Code section 535.3, like any other postjudgment interest statute, is "designed to eliminate the financial incentive or disincentive to appeal and to ensure that a judgment creditor whose satisfaction is delayed because of an unsuccessful appeal receives the time value of the money judgment." *Id.* at 64.

This rationale for section 535.3 and our holding in *Opperman* combine to support a conclusion that Farm Bureau owed the excess of the aggregated tort judgment along with interest on that judgment until a judgment was entered in this contract case. A contrary holding would amount to a windfall

to Farm Bureau, would deprive the estate of the time value of the tort judgment, and would provide an incentive for underinsured motorist insurance carriers to delay payment of money owed by engaging in protracted litigation. On the date judgment was entered in this contract action, the damages due under the insurance contract—i.e., the excess of the aggregated tort judgment and postjudgment interest—were converted into a judgment on the contract and interest began to accumulate on the contract judgment according to section 535.3.

The district court suspended accumulation of interest from the date of the first appeal in this suit until our resolution on appeal. The district court relied on *Muchmore Equipment, Inc. v. Grover*, 334 N.W.2d 605 (Iowa 1983). There, we noted "[t]he assessment of interest on judgments may be affected by an appeal." *Muchmore Equip., Inc.*, 334 N.W.2d at 610. Yet, we were referring to the ability of an appeal of a judgment to affect the accumulation of interest *on the very same judgment*. In this case, the first appeal was interlocutory and occurred before the judgment on the contract case was first entered on July 3, 2006. Accordingly, the interest suspended by the district court was the postjudgment interest on the underlying tort judgment. Thus, *Muchmore Equipment* cannot apply to suspend the accumulation of interest on the underlying tort judgment in this contract case because the underlying tort judgment was not on appeal. More importantly, the district court's decision to stay or suspend the accumulation of postjudgment interest in this case directly contradicts the purposes of postjudgment interest we highlighted earlier.

While postjudgment interest on the tort judgment and contract judgment are both calculated pursuant to Iowa Code section 535.3, the rate is variable over time, so we must determine the appropriate date to use as the date of judgment in the contract case. On remand from our decision in

the first appeal in this contract lawsuit, the district court first entered judgment on July 3, 2006. The parties then briefed and argued the issue, and the district court amended the judgment on December 19, 2006. Thereafter, both parties appealed the judgment. For this reason, our decision in *Muchmore Equipment* is pertinent to the calculation of postjudgment interest due on the contract judgment. In *Muchmore Equipment*, we held,

> when a judgment is modified on appeal and the only action required in the trial court is compliance with the mandate of the appellate court, the interest runs from the date of the original judgment; however, when a judgment is reversed the interest is not generally computed and accrued during the pendency of the appeal.

*Id.* at 610. Thus, the question is whether our decision here requires a modification or a reversal of the contract judgment.

The district court was correct in entering judgment for the estate, as mandated by our previous appellate decision. Indeed, Farm Bureau concedes it owes some amount of the excess tort judgment under the contract of insurance that is the subject of this lawsuit. Thus, Farm Bureau is not actually arguing for vacation of the judgment. Instead, the parties only argue over the legal principles applied to calculate the amount of the judgment. Consequently, we are merely modifying a judgment correctly entered. As such, interest on the contract case should run from, and be calculated according to, the date of the original judgment entry, July 3, 2006.

Finally, the estate takes umbrage with the apparent way in which the district court deducted payments made. While the district court's order does not clearly reflect how the district court applied the payments and offsets, our *Opperman* decision dictates how they will be applied on remand:

> As each payment . . . was received by the plaintiffs, the amount of principal on which interest was computed should be reduced by those amounts as of the time the payments were received. All payments credited to [the insurer] shall first be credited to the interest then due and the balance, if any, to principal.

*Opperman*, 652 N.W.2d at 143 (citing 47 C.J.S. *Interest & Usury* § 74, at 164 (explaining "United States rule" applies payments first to interest)).

**V. Conclusion.**

Farm Bureau is entitled to set off the entire $5000 medical payment coverage benefits it paid from the amount owed under the underinsured motorist coverage provision of the insurance policy, as provided in the insurance contract. Prejudgment interest began to accumulate on the tort damages when the estate filed the tort lawsuit on February 7, 2000. When judgment was entered in the underlying tort lawsuit on February 6, 2002, the accumulated prejudgment interest was aggregated with the tort judgment and the aggregated judgment began to draw postjudgment interest under Iowa Code section 535.3, just like any civil judgment. Postjudgment interest accumulated on the tort judgment until those sums became the measure of damages in this contract lawsuit on July 3, 2006. As of July 3, 2006, the aggregated tort judgment and accumulated postjudgment interest were again aggregated and began to draw interest under Iowa Code section 535.3. We affirm the district court's July 3, 2006 judgment and remand for modification consistent with this opinion.

**AFFIRMED AS MODIFIED; REMANDED WITH INSTRUCTIONS.**