2007 VT 134A

**UTICA NATIONAL INSURANCE COMPANY**
**v. Kevin CYR**

[945 A.2d 361]

No. 06-203

*Katz*, J.

¶ 1. January 24, 2008. Defendant Vermont Mutual Insurance Company[1] appeals from a grant of summary judgment in a subrogation action brought by plaintiff Utica National Insurance Company to recover $5,000 in medical payments. We affirm.

¶ 2. The facts are undisputed and may be briefly summarized. The dispute arises out of a two-car accident involving Kevin Cyr in one vehicle and two third parties, M.W. and R.R., in the other, which M.W. owned and R.R. was driving. M.W.'s vehicle was covered by an automobile policy carried by Utica. The policy provided, in pertinent part, as follows:

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

¶ 3. Utica made $5,000 in medical payments to its insured, R.R., who was injured in the accident. Under the policy terms noted above, Utica thus became

[1] Although Kevin Cyr, the tortfeasor, is nominally the defendant in this action, Vermont Mutual is the real party in interest.

subrogated to R.R.'s claim against Cyr, who was insured by Champlain Casualty Insurance Company, for whom Vermont Mutual administers certain claims, including Cyr's.

¶ 4. Vermont Mutual then settled with R.R. for $25,000. The settlement purported to be a "full and final settlement of all claims" arising from the car accident, explicitly including "the $5,000.00 Medical Payments subrogation claim of Utica National Insurance Company." Both Vermont Mutual and R.R. knew of Utica's subrogation right at the time of the settlement, but Utica was not notified of the settlement and did not consent to it. R.R. neither paid the full $5,000 to Utica nor sought to negotiate a lower payment.

¶ 5. Utica then brought a collection action, seeking to enforce its subrogation right against Cyr and Vermont Mutual.[2] Both parties moved for summary judgment. The motions were denied, Utica's on the basis that there remained genuine issues of material fact as to whether Utica had waived its subrogation right. A subsequent motion for summary judgment — which included affidavits establishing that Utica had not waived the right — was granted in favor of Utica, and Vermont Mutual appealed.

¶ 6. We review a grant of summary judgment de novo, applying the same standard as the trial court. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 211, 790 A.2d 408, 417 (2001). Summary judgment is proper where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Based on the undisputed facts detailed above, we conclude that the grant of summary judgment to Utica was proper.

¶ 7. Vermont Mutual contends that the equities in this case fall in its favor because it faced a dilemma when R.R. insisted on being paid the $5,000 directly so that he could "deal with Utica National directly." Although we agree with Vermont Mutual that subrogation has equitable underpinnings, we do not agree with its conclusion. A brief discussion of the roots of subrogation will frame our analysis.

¶ 8. Subrogation's importance to insurance law can hardly be overstated, and the right of subrogation has "particular approval" under our law. *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 343, 318 A.2d 659, 661 (1974). The doctrine allows an insurer who has reimbursed its insured for a loss to be "subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss." 6A J. Appleman, Insurance Law & Practice § 4051, at 103 (rev. ed. 1972) (hereafter "Appleman"). Subrogation is central to the principle of indemnity; if insurers could not recover from tortfeasors via subrogation, paying claims promptly would be a far riskier proposition. Most insurance policies, like the policy at issue here, also prohibit an insured from prejudicing the insurer's subrogation rights — by settling with a tortfeasor, for example — and violating that prohibition permits the insurer to either refuse the insured's claim or to recover the subrogated amount from the insured if the claim has already been paid.

¶ 9. Because a subrogated insurer's rights against a third-party tortfeasor are derivative of the insured's rights, see *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992), the subrogation claim is also subject to any defenses the tortfeasor (or its insurer) could assert against the insured. 16 L. Russ & T. Segalla, Couch on Insurance 3d § 222:5, at 222-21. One common defense, and one that is relevant to this case, is a waiver or release given by the insured to

---

[2] Vermont Mutual also filed a third-party complaint seeking to recover the $5,000 from R.R., but later stipulated to a dismissal of that claim.

the tortfeasor. See *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 978 P.2d 753, 767 (Haw. 1999). When such a release has been given, the subrogated insurer "has a means to seek reimbursement from the insured for its loss based on breach of contract, not on a claim for subrogation," *Allied Mutual Insurance Co. v. Heiken*, 675 N.W.2d 820, 826 (Iowa 2004), and may be able to pursue a subrogation claim against the tortfeasor under certain circumstances.

¶ 10. Thus, Utica could have proceeded against its insured, R.R., to recover the $5,000 on a breach-of-contract theory. See, e.g., *Pac. Rent-All*, 978 P.2d at 767. As noted *supra*, n.2, Vermont Mutual filed a third-party complaint against R.R. but later dismissed that complaint and apparently recovered nothing from R.R. The question here is whether Utica may instead proceed against the tortfeasor Cyr or his insurer, Vermont Mutual. Although this presents a closer question, we conclude that, under the circumstances presented here, Utica may maintain an action against Vermont Mutual.

¶ 11. Vermont Mutual cites two Iowa cases in support of the proposition that Utica may only proceed against its insured, R.R. These cases do not persuade us. In the first case, the injured party received $8,000 from his insurer after a car crash. *Farm Bureau Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 580 N.W.2d 788 (Iowa 1998). The injured party then settled with the tortfeasor's insurer for $11,000 without notice to, or consent from, the subrogee insurer. The *Farm Bureau* court concluded that under Iowa law the tortfeasor's insurer had no duty to protect the subrogee's rights. *Id.* at 790. After *Farm Bureau*, under Iowa law, it is the subrogor who is "a trustee of the settlement proceeds and not the tortfeasor or the tortfeasor's liability insurer." *Id.*

¶ 12. In the second case cited by Vermont Mutual, the Iowa court faced a slightly different question. There, the insured settled with the negligent builder after receiving payment from its insurer for a building collapse. *Heiken*, 675 N.W.2d at 823. At the time of the settlement, the tortfeasor knew of the insurer's subrogation claim but did not act to protect it. Following the settlement, the insurer sought to recover the payments from its insured. Thus *Heiken* is factually distinguishable from the case at bar, although it does touch on issues relevant to our analysis here.

¶ 13. The *Heiken* court discussed the equitable underpinnings of subrogation law, ultimately concluding that an insurer in Utica's position "may also have a subrogation claim against the tortfeasor, despite the settlement and release, based on principles of equity that preclude the tortfeasor from using the settlement and release as a defense when the tortfeasor had knowledge of the subrogation rights." *Id.* at 830. This conclusion is both contrary to Vermont Mutual's interpretation of *Heiken* and in line with the overwhelming weight of authority in state and federal courts[3] and the treatises.[4]

---

[3] See, e.g., *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 260-61 (2d Cir. 1999) (applying New York law; concluding that "[w]here a third party tortfeasor obtains a release from an insured with knowledge that the latter has already been indemnified by the insurer . . . such release does not bar the insurer's right of subrogation"); *Nat'l Ins. Underwriters v. Piper Aircraft Corp.*, 595 F.2d 546, 551 (10th Cir. 1979) (applying Colorado law; noting that "where a release is obtained from the insured with knowledge that the latter has already been indemnified by the insurer, such release does not necessarily bar the right of subrogation of the insurer"); *Sentry Ins. Co. v. Stuart*, 439 S.W.2d 797, 800 (Ark. 1969); *Cleaveland v. Chesapeake & Potomac Tel. Co. of Md.*, 169 A.2d 446, 448 (Md. 1961) ("The cases

¶ 14. A Second Circuit case, *Allstate Insurance Co. v. Mazzola*, 175 F.3d 255 (2d Cir. 1999), is more closely on point. In *Mazzola*, the injured party received a payment of $133,000 from his insurer, and then sued the tortfeasor and the tortfeasor's insurer. That suit was ultimately settled for $1,000,000, and the injured party signed a release purporting to extinguish all claims arising out of the accident. Although it noted that there remained a genuine issue of material fact as to whether the settling parties knew of the subrogation right, *id.* at 261, the Second Circuit also clearly stated, because the issue would arise on remand, that if the tortfeasor and his insurer

> effected a settlement and a release of liability from the [injured party] without consent from [the injured party's insurer], and with actual or constructive knowledge that [the injured party's insurer] had already paid benefits . . . and thus obtained subrogation rights, the release does not preclude [the] right of subrogation against the defendants.

*Id. Mazzola*, then, would support affirming the trial court's summary-judgment order.

¶ 15. The trial court's order also cited *Pacific Rent-All*, 978 P.2d at 767-70, as representative of the line of cases supporting Utica's position. In *Pacific Rent-All*, a man injured by an air compressor

___

and text writers generally take the position that where third parties, who may be liable to an insured for a loss, effect a settlement . . . and obtain a release . . . with knowledge of [an insurer's subrogation right] the . . . release will not bar the assertion of the insurer's right of subrogation.").

[4] See, e.g., 16 L. Russ. & T. Segalla, Couch on Insurance § 224:113, at 224-138 to -141; 6A Appleman § 4092, at 246-49.

received payment from his insurer for his injuries and then settled with the manufacturer, which knew of the earlier payment and the insurer's resultant subrogation interest. The Hawaii court held that "[i]f the tortfeasor or its liability insurer knows of the subrogation claim and settles with the insured, without protecting the insurer's subrogation claim, the release given by the insured does not bar the subrogation claim. The subrogated insurer can still recover from the tortfeasor." *Id.* at 767 (emphasis omitted).

¶ 16. Vermont Mutual would distinguish *Pacific Rent-All* on the basis that, although that case allows an insurer to maintain a subrogation action against a tortfeasor who purported to unilaterally release the subrogation right, "the [Hawaii] court specifically stated that such an action is a second avenue of reimbursement in addition to available remedies against the insured." Based on this reading, Vermont Mutual contends that Utica National "should exercise the alternative of seeking reimbursement from [R.R.]." But Vermont Mutual's interpretation of the Hawaii case would elevate a single phrase of dictum above the clear holding of the case, which is directly to the contrary. See *id.* at 768 ("[T]he insured's release of the tortfeasor will not affect the insurer's subrogation right of reimbursement when the tortfeasor acts inequitably and causes actual prejudice to the insurer."). The Hawaii court plainly did not require subrogees like Utica to exhaust their remedies against the insured before pursuing relief from a tortfeasor who secretly settled with the subrogee's insured. The nub of the issue before us today is the scope of the requirement that the tortfeasor or its liability insurer protect the subrogated insurer's subrogation claim.

¶ 17. Vermont Mutual's position is also undermined by the holding in the only Vermont case directly on point, *Cushman & Rankin Co. v. Boston & Maine R.R.*, 82

Vt. 390, 73 A. 1073 (1909), upon which the trial court also relied. In *Cushman*, an injured party collected from its insurer and then settled with a tortfeasor who knew of the insurer's subrogation rights but did nothing to protect them. *Id.* at 395, 73 A. at 1075. We held that the settlement, because it was reached after the tortfeasor knew of the subrogation right, did not bar the insurer from exercising that right. *Id.* at 396-97, 73 A. at 1075. *Cushman* remains consonant with the position taken by every other state to have resolved the question since.[5] *Cushman*, however, does not dispose entirely of the question before us today: whether the language in the settlement agreement stating that the settlement included the subrogation claim is sufficient to protect the subrogation right and therefore bar Utica from proceeding against Vermont Mutual.

¶ 18. The mere inclusion in a settlement agreement of language purporting to encompass a known subrogation right is insufficient to protect the right. While we acknowledge that Vermont Mutual owed its insured, the tortfeasor, a duty to indemnify him against R.R.'s damages claim, Vermont Mutual could have discharged that duty while still doing more to protect Utica's known subrogation right. See *Farm Bureau*, 580 N.W.2d at 790 (noting that a liability insurer has a duty to protect a tortfeasor from a claim for damages). For example, Vermont Mu-

tual might have notified Utica of the settlement — enabling Utica to proceed promptly against R.R. — or might have written a separate three-party check in the subrogated amount, made out to R.R. and Utica. See *Lopez v. Concord Gen. Mut. Ins. Group*, 155 Vt. 320, 326-27, 583 A.2d 602, 607 (1990). This requirement will impose no great burden on insurers and will help to ensure the continued vitality of the principle of subrogation in Vermont.

¶ 19. Finally, Vermont Mutual contends that we should reverse the summary judgment because "plaintiffs' attorneys routinely negotiate med-pay subrogation interests and medical liens with providers [without notice to subrogee insurers]." But there is no evidence in the record regarding the routine practice in Vermont. And even assuming that this assertion is correct, the practice of settling claims without the consent of a known subrogee is inequitable. See *supra*, n.3 & ¶ 14. We decline to reverse on this basis. The order granting summary judgment in favor of Utica was proper.

*Affirmed.*

---

[5] The procedural limits placed on *Cushman* by our later holding in *Moultroup v. Gorham*, 113 Vt. 317, 321, 34 A.2d 96, 98 (1943), do not affect the outcome here. In *Moultroup* the subrogee insurer apparently stood idly by during a lawsuit in which the subrogor sought to recover the full amount of her damages from the tortfeasor. The lawsuit was known to the subrogee. Under those facts, we held that the subrogee "must intervene in proper time, or lose their recourse to the wrongdoer." *Id.*