2013 VT 77

# GEICO Insurance Company v. Thomas Bernheim and Nancy Bernheim

[86 A.3d 400]

No. 12-172

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed August 30, 2013

Motion for Reargument Denied October 11, 2013

*Antonin Robbason* of *Miller Faignant & Robbason, P.C.*, Rutland, for Plaintiff-Appellee.

*Tom Bernheim* and *Nancy Bernheim*, Pro Ses, Essex Junction, Defendants-Appellants.

¶ 1. **Dooley, J.** Defendants, Nancy and Thomas Bernheim, appeal the trial court's summary judgment decision granting plaintiff GEICO Insurance Company's claim against them for reimbursement of $10,000 that GEICO had paid defendants under the medical-payments provision of their automobile insurance policy. Although we agree with the trial court that defendants must reimburse GEICO, we reverse and remand for a determination of the proper reimbursement amount.

¶ 2. The facts related to this appeal are not in dispute and can be summarized as follows. Defendants were, at the time of the events leading to this case, insured by GEICO under an automobile insurance policy. On July 23, 2007, defendant Nancy Bernheim was involved in a collision with another car driven by an operator who was insured by Liberty Mutual.[1] As a result of the collision, defendant sustained injuries, and GEICO paid her $10,000 (the policy limit) under the medical-payments provision of defendants' policy.

---

[1] As the true party in interest, Liberty Mutual takes on the role of "tortfeasor" in this case.

¶ 3. The insurance policy included the following clause:

> When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

¶ 4. On October 9, 2007, GEICO notified Liberty Mutual of GEICO's subrogation rights related to the payment it had made to defendants. In August 2008, defendants entered into a settlement with Liberty Mutual for $30,000 with regard to all claims. That settlement stated that it was "inclusive of any liens, including but not limited to GEICO Insurance Company." Despite having received notice of GEICO's subrogation right, Liberty Mutual paid the entire settlement directly to defendants.

¶ 5. On March 20, 2009, GEICO sent a demand letter to defendants, seeking reimbursement of the $10,000 payments that it had made. They did not accede to GEICO's demands, and on January 20, 2010, GEICO filed suit claiming breach of contract and breach of fiduciary duty solely against defendants and did not join Liberty Mutual as a party. GEICO alleged in its initial pleadings that it had not had an opportunity to give notice of its subrogation rights to Liberty Mutual before Liberty Mutual's settlement with defendants, but after business records came out during discovery demonstrating that GEICO had in fact given such notice, it withdrew that allegation, explaining that it had not been aware of the notice. On July 10, 2010,[2] the statute of limitations on any claim by GEICO against Liberty Mutual ran.

¶ 6. Both parties moved for summary judgment, and the trial court granted GEICO's motion and denied defendants' motion. In its initial decision of July 14, 2011, the trial court stated that "GEICO is correct that this action sounds in breach of contract," but ultimately based its decision on unjust enrichment, stating that "[t]o the extent that [defendants] have recovered twice for their injuries, GEICO is entitled to reimbursement of its payment.

---

[2] The trial court found July 10, 2010, to be the expiration of the statute of limitations. This finding is at odds with the date of the accident as reported by defendants, July 23, 2007. See 12 V.S.A. § 512 (listing statute of limitations for personal injury actions as three years). Although we note the discrepancy, the expiration date of the statute of limitations is of no consequence to our decision.

Otherwise, [defendants'] double recovery amounts to unjust enrichment." It also noted that this holding "finds support in the trustee theory of settlement proceeds." In its October 31, 2011 decision on a post-trial motion to alter judgment, the court clarified that "[t]he decision was ultimately based on the trustee theory of settlement proceeds, whereby the Bernheims hold their recovery from Liberty Mutual in trust for GEICO to the extent of GEICO's prior payment under the policy." A final order and judgment, which incorporated the summary judgment decision but offset defendants' costs against plaintiff's recovery, was entered on April 16, 2012. This appeal followed.

¶ 7. All of the issues on appeal are based on the summary judgment decision, as clarified by the decision on the motion to alter judgment.[3] We review summary judgment rulings de novo, using the same standard as the trial court. *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177. Summary judgment is appropriate if, based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *id.*, the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

¶ 8. Defendants make a number of arguments as to why the trial court's decision on summary judgment should be reversed. They argue that: (1) *Utica National Insurance Co. v. Cyr*, 2007 VT 134A, 183 Vt. 564, 945 A.2d 361 (mem.), bars GEICO from seeking recovery only from defendants instead of from Liberty Mutual; (2) the defense of laches applies because GEICO chose not to pursue its subrogation rights; (3) GEICO withdrew the essential claim in its case when it recognized that it had notified Liberty Mutual of its subrogation right before defendants' settlement with Liberty Mutual; (4) GEICO waived its rights of recovery by "deliberate attempts to conceal from [defendants] and from the trial court" that it had notified Liberty Mutual of its subrogation rights; (5) GEICO failed to demonstrate what portion of the settlement proceeds were subject to recovery by GEICO;

---

[3] Defendants attack the ruling on the motion to alter the judgment as an abuse of discretion because the court's analysis differed from that in the summary judgment ruling and it "imposed an additional criteria on [defendants] . . . beyond the ruling on the cases on which the trial court completely relied." We emphasize that we review the record de novo to determine whether the movant is entitled to judgment as a matter of law.

(6) the trial court erred in raising the issue of the statute of limitations for GEICO's potential claim against Liberty Mutual, as the statute of limitations is an affirmative defense; (7) defendants did not have an obligation to protect GEICO's subrogation rights; (8) the trial court's findings of fact were not based on evidence in the record; and (9) the trial court abused its discretion by contradicting itself within its summary judgment order of July 14, 2011.[4] We can divide these claims into two categories: those that relate to whether GEICO can recover from defendants, and those that relate to the amount that GEICO can recover from defendants. We begin with the first category of claims and then move to the second category.

¶ 9. The first of the claims challenging GEICO's ability to recover at all is the principal claim, and our answer to it goes a long way towards answering the others. In *Cyr*, we reaffirmed and expanded upon the major holding of *Cushman & Rankin Co. v. Boston & Maine R.R.*, 82 Vt. 390, 73 A. 1073 (1909): that an insurer could maintain a subrogation action against a tortfeasor, even after the tortfeasor settled with the insured, if the tortfeasor had known about the plaintiff insurer's subrogation rights prior to making the settlement.[5] *Cyr*, 2007 VT 134A, ¶ 17. We agree with defendants that the situation in *Cyr* is similar to this case, in that GEICO could have brought a claim against Liberty Mutual until the statute of limitations had run because it had notified Liberty Mutual of its subrogation rights before the settlement between Liberty Mutual and defendants.

¶ 10. The question in this case, however, is not whether GEICO could have brought a case against Liberty Mutual — we agree with defendants that it could have. Rather, it is whether the existence of that right meant that GEICO could not choose, instead, to bring a claim against defendants. For this question, *Cyr* is of no help to defendants' position, and defendants point us to no part of that decision that suggests that the remedy claim therein is the exclusive claim available to an insurer in GEICO's position. The dicta in *Cyr*, as well as that in *Cushman & Rankin*

---

[4] We dealt with this last argument in note 2, *supra*, so we will not return to it.

[5] We noted, however, the "procedural limits placed on *Cushman*" by *Moultroup v. Gorham*, 113 Vt. 317, 321, 34 A.2d 96, 98 (1943), in which we held that if a subrogee insurer "stood idly by during a lawsuit in which the subrogor sought to recover the full amount of her damages from the tortfeasor," it is not able to later bring its own case against the tortfeasor. *Cyr*, 2007 VT 134A, ¶ 17 n.5.

*Co.*, on which *Cyr* is based, suggests that defendants' position is wrong. In *Cushman & Rankin Co.*, this Court noted, "[b]ut when compensation is received on recovery the insured stands as trustee for the insurer to the extent of the part of the loss paid by it." 82 Vt. at 397, 73 A. at 1075. In *Cyr*, we noted that the insurer "could have proceeded against its insured."[6] 2007 VT 134A, ¶ 10.

¶ 11. Defendants rely on an Iowa Supreme Court case discussed in *Cyr*, *Allied Mutual Insurance Co. v. Heiken*, 675 N.W.2d 820 (Iowa 2004), to argue that GEICO was able to bring an action only against Liberty Mutual. In *Heiken* — much like in this case — the insureds and a tortfeasor reached a settlement after the insureds had already received payments from the insurer, and the tortfeasor was aware of the insurer's subrogation rights when it made the settlement. *Id.* at 823. The insurance contract contained a subrogation clause and required that the insureds "cooperate" with the insurer. *Id.* The insurer brought a breach-of-contract claim against the insureds for entering into the settlement, asserting that they had impaired the insurer's subrogation rights. *Id.* at 823-24. The court reasoned — in the same way that we did in *Cyr* — that the insurer's subrogation rights were not impaired by the insured's settlement with the tortfeasor because the tortfeasor knew of those rights when it entered into the settlement. Consequently, it did not find a cognizable breach-of-contract claim against the insureds. *Id.* at 830. *Heiken*, like *Cyr*, addressed the situation present in this case in passing, noting that any money paid by the tortfeasor to the insured "would generally be recoverable by the insurer against the insured on a trustee theory." *Id.* at 829 n.5.

¶ 12. Although we have not had the opportunity to rule on a situation identical to that before us in this case, we came close in *Moultroup*. In *Moultroup*, we explained that a plaintiff could not split an automobile negligence cause of action into separate suits for personal injury and property damage in order that an insurer that paid plaintiff for the property damage could be reimbursed for the property damage recovery. Instead, the proper procedure was for the plaintiff to bring one suit for all items of damage and

---

[6] The full quote says that the insurer could have recovered against the insured on a breach of contract theory. As we discuss below, plaintiff does not argue here that defendants breached the insurance contract by not paying it. Rather, plaintiff's theory is that it is entitled to reimbursement to avoid unjust enrichment.

obtain a special itemized verdict specifying the components of the recovery. In such a case, the plaintiff would hold "as trustee for the insurer" the amounts recovered for the components for which the insurer had paid the plaintiff. 113 Vt. at 320, 34 A.2d at 98.

¶ 13. ■ The theory that the insured is a trustee for settlement proceeds is well established in insurance law. Under this theory, an "insurer which has paid a claim for a loss caused by a third party may be reimbursed out of the funds received by the insured in satisfaction of the insured's claim against that third-party tortfeasor" when, among other possible scenarios, "[t]he insured has been more than made whole by the combined payments from the insurer and third party, hence has received a double recovery to some extent . . . ." 16 Couch on Insurance § 226:7, at 226-19 (3d ed. 2005). The insured "thus is considered to hold the funds to that extent in trust for the insurer or has thereby been unjustly enriched, requiring reimbursement." *Id.*; see, e.g., *Ceres Envtl. Servs., Inc. v. Arch Specialty Ins. Co.*, 853 F. Supp. 2d 859, 867 (D. Minn. 2012) ("[A] constructive trust is an appropriate remedy when an insured recovers money from a third party and the insurer is subrogated to the insured's rights.") (applying New York law); *Dixon v. Blackwell*, 298 P.3d 185, 193 n.38 (Alaska 2013) (noting that when insured who has already been paid by its insurer settles with tortfeasor, "[a]ny proceeds recovered must be paid to the insurer, less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim" (quotation omitted)); *Heiken*, 675 N.W.2d at 829 n.5 ("[A]ny settlement proceeds paid by the tortfeasor to the insured that represent losses previously paid by the insurer . . . would generally be recoverable by the insurer against the insured on a trustee theory."); *Rockingham Mut. Fire Ins. Co. v. Bosher*, 39 Me. 253, 255 (1855) ("[P]ayment to the [insured] by the insurer, does not bar the right against another party originally liable for the loss, but the owner by recovering payment of the underwriters, becomes trustee for them."). We explicitly adopt this trustee theory in this case.

¶ 14. ■ The undisputed facts in this case place the settlement received by defendants from Liberty Mutual squarely in the category of double recovery that is held in trust for the original insurer. Therefore, at the time the suit was commenced, we conclude that GEICO had a choice of whom to bring their claim against: they could either have brought a subrogation claim

against Liberty Mutual, or a reimbursement claim based on the trustee theory against defendants.[7] We can find no support for defendants' position that GEICO had to bring its action against the tortfeasor, or its insurer, rather than against GEICO's insured.[8] Cf. *Nat'l Union Fire Ins. Co. v. Grimes*, 153 N.W.2d 152 (Minn. 1967). Either would have been an acceptable choice; given that GEICO understood that defendants had at that point been compensated twice, it was far from unreasonable for them to have chosen defendants as the party to sue. We note, furthermore, that this conclusion is not based at all on the presence or effect of the statute of limitations on GEICO's potential claim against Liberty Mutual.[9] At the time the suit was commenced, the statutory period had not run and GEICO had a subrogation claim against Liberty Mutual. Because of the passage of time, it no longer has this claim. Our reason for finding that defendants were a proper party to sue is based solely on the state of affairs at the time GEICO brought its suit, and the statute of limitations is therefore unrelated to the question at hand. Thus, the fact that the passage of the limitations period for a suit against Liberty Mutual was first recognized by the trial judge is irrelevant to this decision.

¶ 15. Having resolved the main question of whether our holding in *Cyr* means that GEICO was limited to bringing a claim against Liberty Mutual, we can dispose of defendants' other claims related to GEICO's ability to recover.

¶ 16. ▮ We begin with the issue of laches. In order for laches to apply a party must have "fail[ed] to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right." *Stamato v. Quazzo*, 139 Vt. 155, 157, 423 A.2d

---

[7] Contrary to defendants' assertion, whether GEICO understood its options is immaterial.

[8] Defendants also phrase this argument in terms of GEICO's obligation to protect its own interests and defendants' lack of responsibility to protect GEICO's rights. Again, we emphasize that the issue here is not what right GEICO had against Liberty Mutual, but instead what right it has against defendants. The fact that GEICO chose not to pursue its rights against Liberty Mutual, or lost them because of its negligence, is not determinative of its rights against defendants.

[9] The trial court initially distinguished *Heiken* from the case at hand because the statute of limitations had not run in *Heiken*. In its decision on the motion to alter judgment, however, it clarified that it was distinguishing *Heiken* because it was a breach-of-contract claim rather than a claim based on the trustee theory. The latter distinction is correct.

1201, 1203 (1980). Leaving aside any discussion as to whether GEICO did in fact file the current suit after an unreasonable period of time, defendants have failed to identify any prejudice, beyond stating that "the result has been extremely detrimental" to them. Naturally, having to reimburse an insurer is "detrimental" to a party when compared to not having to make such reimbursement, but that is not "prejudice" stemming from a claim being brought late — it merely represents a wish not to pay. Insofar as defendants suggest that GEICO gained an advantage by waiting until the statute of limitations ran for a claim against Liberty Mutual, we have made clear in the above paragraphs that the statute of limitations is not important to whether GEICO has a claim against defendants. Consequently, no prejudice has resulted from any delay in GEICO's bringing of the claim, and we affirm the trial court's rejection of a laches defense.

¶ 17. As for defendants' contention that GEICO withdrew its central claim when it admitted that it had given notice to Liberty Mutual of its subrogation rights before Liberty Mutual's settlement with defendants, the theory on which the trial court made its decision regarding reimbursement — and on which we affirm — was the trustee theory of settlement proceeds, rather than breach of contract.[10] The issue of notice to Liberty Mutual plays no role in that theory, so the claim made by GEICO was in no way the central claim.

¶ 18. We next look at defendants' claim that GEICO waived its subrogation rights when it — in defendants' words — made "deliberate attempts to conceal from [defendants] and from the trial court . . . that it had, indeed, provided notice of its subrogation rights to Liberty Mutual in a timely fashion." GEICO was entitled to plead alternative grounds for recovery, even if they are inconsistent, and did so here. See V.R.C.P. 8(e)(2). Thus, this is not truly a waiver argument — defendants express no true waiver argument in their briefing, and we will not invent one on their behalf — but instead seems to be a call for sanctions against GEICO for its initial false assertion in its complaint. Under GEICO's theory of recovery recognized here, it does not matter whether GEICO had a subrogation claim against Liberty Mutual,

---

[10] GEICO's complaint includes both breach-of-contract and breach-of-fiduciary-duty theories as to why it was entitled to reimbursement. It did not pursue its breach-of-contract theory in its motion for summary judgment or on appeal.

or whether defendants breached their contractual responsibilities to protect GEICO's right of reimbursement. We are reviewing the summary judgment order and the decision on defendants' motion to alter judgment, neither of which address any sanctions against GEICO based on its alleged misconduct. The now-rejected complaint allegations are not before us.

¶ 19. This concludes our analysis of defendants' challenges to the ability of GEICO to recover at all. On these points, we affirm the decision of the superior court.

¶ 20. We now address defendants' arguments related to the amount of GEICO's recovery. They contend that GEICO needed to prove what portion of the settlement went toward the medical payment. The text of defendants' release with Liberty Mutual said that it was "inclusive of any liens, including but not limited to GEICO Insurance Company." The trial court read that to mean that the entire $10,000 of the GEICO payment was included in the $30,000 recovery, stating that "the undisputed facts here show that the loss paid by GEICO was included in the Bernheim/ Liberty Mutual settlement."

¶ 21. We do not find that text to be so clear, which raises a question of first impression: when an insured settles with a tortfeasor and holds that recovery in trust for his or her insurer, but the settlement does not clarify what portion of the settlement is dedicated to the injury for which the insurer already compensated the insured, how is the reimbursement from the insured to the insurer to be calculated? Courts in other jurisdictions have taken at least three general approaches to these sorts of cases, as explained in A. Parry, *Subrogation in Pennsylvania—Competing Interests of Insurers and Insureds in Settlements with Third-Party Tortfeasors*, 56 Temp. L.Q. 667, 678-86 (1983): (1) reimbursing the insurer fully, based either on the principle that settlement means full recovery by the insured or on the principle that by entering into the settlement the insured violated the insurer's subrogation rights,[11] see, e.g., *Ill. Auto. Ins. Exch. v. Braun*, 124 A. 691 (Pa. 1924); (2) requiring proof that the insured has been made whole and/or proof of the amount of the settlement that

---

[11] It is based on the first of these principles that the trial court seems to have granted reimbursement of the full amount to GEICO. Based on our analysis above, the second principle would not be applicable to this case, as we have found that GEICO maintained its full subrogation rights against Liberty Mutual at the time that this case was commenced.

went towards the injury for which the insurer provided an initial payment, and allowing reimbursement to the insurer only if the insured has been made whole or only from that part of the settlement, see, e.g., *Hamilton Fire Ins. Co. v. Greger*, 158 N.E. 60 (N.Y. 1927)[12]; and (3) prorating the settlement recovery between insurer and insured based on the settlement as a percentage of the value of the verdict,[13] see, e.g., *Pontiac Mut. Cnty. Fire & Lightning Ins. Co. v. Sheilby*, 116 N.E. 644 (Ill. 1917).

¶ 22. ■ ■ Although we have never answered this precise question, we have in a similar circumstance adopted some of the logic of the second approach. In *Travelers Insurance Co. v. Henry*, 2005 VT 68, 178 Vt. 287, 882 A.2d 1133, we addressed the question of what constituted "double recovery" within the context of workers' compensation insurance. See 21 V.S.A. § 624(e) (stating that employer or workers' compensation insurer is entitled to first-dollar reimbursement from "[a]ny recovery" made by injured employee against a third party for damages, "after deducting expenses of recovery," but is not entitled to reimbursement from first party insurance benefits "except to prevent double recovery"). We held that in order to prevent double recovery, first-party awards were required to be apportioned between economic and noneconomic damages, the former subject to the reimbursement obligation, the latter exempt under § 624(e). *Henry*, 2005 VT 68, ¶¶ 23-24. We explained the difference between the two types of damages in terms of whether the same injury had already been compensated by the workers' compensation payment:

> If the employee recovers [economic] damages and has already been compensated for these losses by the insurer, the insurer is entitled to reimbursement to prevent a double recovery. All other damages that the employee recovers under a first-party insurance policy, including compensation for pain and suffering and other related nonmonetary injuries, are considered noneconomic damages. Because workers' compensation does not compensate an employee for such losses, there is no danger of a double recovery, and the insurer is not entitled to reimbursement from this portion of the employee's award.

---

[12] A more recent application of this approach can be found in *Dimick v. Lewis*, 497 A.2d 1221 (N.H. 1985).

[13] Of course, in this case, we have no verdict that would allow such a computation.

*Id.* ¶ 24. Notably, we did not "conclude that an employee was entitled to be 'made whole' before a double recovery could occur." *Progressive Cas. Ins. Co. v. Estate of Keenan,* 2007 VT 86, ¶ 8, 182 Vt. 298, 937 A.2d 630 (citing *Henry,* 2005 VT 68, ¶¶ 23-24).

¶ 23. ▋ The same logic applies in a case such as this because the goal of the trustee theory is to prevent a double recovery. While it is clear from the text of the settlement that some of the compensation was to go towards the injuries for which GEICO had already paid defendants, it is not clear what portion was so dedicated, and consequently what amount is held by defendants as a double recovery and should be reimbursed to GEICO. Defendants argue that the settlement represented a compromise and point out that they had first sought $60,000 from Liberty Mutual. They claim that the ultimate settlement amount represented no more than fifty percent of their total damages so that GEICO's coverage must be reduced by at least fifty percent. We cannot determine the validity of defendants' position on the summary judgment record. We must, therefore, remand for the trial court to determine defendants' total damages and the percentage attributable to the medical payments covered by GEICO. To the extent that the settlement amount falls short of defendants' full compensatory damages, including all of the medical expenses, GEICO's reimbursement must also be cut back proportionally. To the extent that the court concludes that GEICO is entitled to less than the $10,000 it paid, the court must recalculate GEICO's share of defendants' costs for reaching the settlement with Liberty Mutual.

¶ 24. Defendants' last argument is that the trial court's "findings of fact" were not based on the evidence in the record. We note, first of all, that the decision being appealed was a summary judgment order, so the trial court did not make any findings of fact. That aside, the "findings of fact" identified by defendants are the trial court's multiple references to their having made a "double recovery" or receiving an "unjustified windfall" based on what the trial court characterized as "the undisputed fact[ ]" that "the loss paid by GEICO was included in the Bernheim/Liberty Mutual Settlement." As stated above, we agree that the summary judgment record does not allow for a determination of the amount of defendants' double recovery.

*Reversed and remanded for a redetermination of the amount of reimbursement; affirmed as to all other points.*

## On Motion for Reargument

¶ 25. GEICO has filed a motion to reargue, asserting that this Court misunderstood the proceedings below and erred in remanding to the trial court when there was a hearing on the merits. Although there is no transcript, it is clear from the trial court's order that the hearing on April 5, 2012 was for the sole purpose of determining what amount of setoff defendants were entitled for costs incurred in reaching the settlement with the tortfeasor under the common-fund doctrine. This is a separate issue from the subject of the remand — to determine what portion of the settlement went towards injuries already compensated by GEICO. Therefore, appellee's motion to reargue fails to identify points of law or fact overlooked or misapprehended by this Court, and is denied. See V.R.A.P. 40.